UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALICIA LONG, *on behalf of* ) | |
| D.L., a minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:15 CV 1933 JMB |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**[2]

Alicia Long ("Plaintiff"), on behalf of D.L., appeals the decision of the Acting

Commissioner of Social Security ("Defendant"), denying disability benefits under Title XVI of

the Social Security Act. 42 U.S.C. § 1381 et seq. Substantial evidence supports Defendant's

decision, and it is therefore **AFFIRMED**. See 42 U.S.C. § 1383(c)(3).

I.      **Factual and Procedural Background**

        A.      **Factual Background**[3]

        D.L. is a minor child who was ten years old at the time of the original disability

application in this case, which Plaintiff (D.L.'s mother) filed on April 12, 2012. In the

application, Plaintiff alleges that D.L. qualifies as disabled due to "speech problems." (Tr. 59)

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act.

[2] All matters are pending before the undersigned United States Magistrate Judge with the consent of the parties, pursuant to 28 U.S.C. § 636(c).

[3] The Court has reviewed the entire administrative record in this matter, but will only discuss those portions of the record relevant to the issues raised by the parties.

At the administrative hearing in this matter, Plaintiff also testified that D.L.'s "main problems are with reading," and that he has learning disabilities. (Tr. 46) In response to questioning by counsel, Plaintiff also testified that D.L. reads books every day when he gets home from school. Nevertheless, Plaintiff represented that D.L. does not "understand what he's reading" and cannot "explain what he just read." (Tr. 52) Plaintiff also alleged that D.L. has multiple issues with expressive communication. With regard to his speech, Plaintiff testified that D.L. has long-standing issues with pronunciation and articulation, and those issues make him difficult to understand. (Tr. 46-47) Plaintiff acknowledged, however, that those issues improved after the implementation of an individualized education plan ("IEP") at D.L.'s school along with specialized speech instruction. (Tr. 48-49) Plaintiff acknowledged that "the help he's getting in speech" has led to "an improvement," and she "can understand him now." (Tr. 48) As to other modes of expressive communication, Plaintiff testified that D.L. can write complete sentences, but he needs extra help. (Tr. 53)

D.L. testified about his classes at school, such as speech, arithmetic, science, social studies, and P.E. (Tr. 37-38) D.L. testified that he likes P.E. and math, that he has friends at school and in his neighborhood, and that he plays football with friends. (Tr. 38-41) Plaintiff appeared to agree with D.L., testifying that D.L. gets along "fine" with other kids in school, he does not get into fights or arguments, he has not been disciplined by the school, and he receives good grades. (Tr. 50)

The medical records indicate that D.L. had no behavior problems, normal attention span, responds well to discipline, gets regular exercise, and socializes well with peers. (Tr. 225) D.L.'s pediatrician noted two problems: hypopigmentation, which required a dermatological referral, and decreased vision at 20/40. (Tr. 226) Educational records from D.L.'s school, as

well as other records document D.L.'s speech, reading, and learning issues. As noted earlier, D.L. is subject to an IEP, which documents issues with basic reading, comprehension, and language. (Tr. 139-69) The IEP documents D.L.'.s difficulties in reading at grade level, and answering comprehension questions after reading or listening to a story. (Tr. 140)

As of the time of D.L.'s last IEP review, he spent most of his class time in regular classes, and 120 minutes per week in special reading instruction and 60 minutes per week of extra language therapy. As will be relevant to the discussion later of D.L.'s abilities to interact with others, the IEP noted that D.L. "works well with his peers, is polite, and respectful of the school and speech room rules, routines, and expectations." (Tr. 142)

The IEP further noted that D.L. made significant progress as a result of the IEP. For instance, an IEP review dated October 12, 2011 noted that "[D.L.] has made good progress with his language skills and IEP language goals. Language therapy minutes were reduced due to significant progress on his language goals, improved language performance in the classroom, and to allow more participation in the least restrictive environment." (Tr. 142)

As to the opinion evidence in this case, both of D.L.'s teachers—Ms. J. Bober, his classroom teacher, and Ms. Olivia Richardson, his special education teacher—rated D.L.'s functional limitations. Ms. Bober completed an Individual Functional Assessment, dated January 26, 2013. Ms. Bober rated D.L. with marked limitations in the domains of: (1) acquiring and using information; (2) attending and completing tasks; and (3) interacting and relating to others. (Tr. 190-91) Ms. Bober rated D.L. with less than marked limitations in moving about and manipulating objects, and no limitations in caring for himself, and his health and physical well-being. (Tr. 191) Ms. Bober's ratings were in the form of check box answers on a form—she did not elaborate on the basis for her opinions, although the form requested the

rater to describe the child's functioning and provided a space for comments relative to each domain. (Tr. 190-91)

Ms. Richardson completed an Individual Functional Assessment form, dated February 6, 2013. Ms. Richardson rated D.L. with marked limitations in acquiring and using information and attending and completing tasks. Ms. Richardson explained her ratings by noting that: (1) D.L. receives services in a resource setting for reading; and (2) D.L. makes noises but Ms. Richardson does not think D.L. is aware of it, and that he also makes careless mistakes and does not like to be corrected. (Tr. 193) Ms. Richardson rated D.L. with less than marked limitations in all other areas, except health and physical well-being, where she rated him with no limitations. (Tr. 194) As it relates to the domain of interacting and relating to others, Ms. Richardson commented that D.L. works well in a group, he does not willingly make friends, and he is able to express his views and ideas. (Tr. 194)

Speech pathologist Barbara Schmidt, M.S., submitted an Individual Functional Assessment form, dated February 7, 2013. Ms. Schmidt rated D.L. with marked limitations in acquiring and using information, attending and completing tasks, interacting and relating to others, and caring for himself; and less than marked limitations in moving about and manipulating objects, and health and physical well-being. (Tr. 229-30) Ms. Schmidt's ratings were in the form of checked boxes; she did not elaborate or otherwise explain her ratings. (Id.)

Lori Linder, M.A., CCC/SLP, from City Speech, Inc., examined D.L. and completed a Speech and Language Evaluation form, dated June 21, 2012. Ms. Linder diagnosed D.L. with moderate receptive language disorder and severe expressive language disorder. (Tr. 208, 210) Ms. Linder opined that D.L. had: (1) "moderate" difficulties in receptive language; (2) difficulty following complex oral directions and understanding word associations; (3) severe expressive

language skills; and (4) difficulty generating grammatically correct sentences. (Tr. 210) Ms. Linder concluded that D.L.'s prognosis for developing appropriate language skills was "fair to good with continuing special education and language therapy." (Id.)

On January 11, 2014, D.L. underwent a consultative examination, with Shea Voelker, Psy.D. Dr. Voelker found that D.L. had a poor ability to communicate but that D.L. was "100% intelligible" and had a good ability to interact with family members, peers, and authority figures. Dr. Voelker also found that D.L. responded to questions from Dr. Voelker, and "warmed up to her over time." Dr. Voelker thought D.L.'s prognosis was "fair with treatment." (Tr. 234-35) Dr. Voelker diagnosed D.L. with mixed receptive and expressive language disorder, but noted that "none of today's diagnoses were based on testing."[4] (Tr. 235)

State agency consultants Tricia Petrillo, M.S., Kyle Devore, Ph.D., and Isabel Mora, M.D., jointly opined that D.L. had marked limitations in the domain of acquiring and using information but no other limitations. (Tr. 62)

Plaintiff also completed a function report for D.L. Regarding D.L.'s communication skills, Plaintiff indicated that D.L. could: (1) deliver phone messages; (2) repeat stories he has heard; (3) tell jokes or riddles accurately; (4) explain why he did something; and (5) talk with family and friends. (Tr. 123) Plaintiff also noted that D.L. does not use sentences with "because," "what if," or "should have been." (Id.)

**B.    Procedural History**

On April 12, 202, Plaintiff applied for Title XVI disability benefits on behalf of D.L. After the application was initially denied, Plaintiff requested a hearing before an administrative law judge ("ALJ"). On December 13, 2013, an ALJ held a hearing. Plaintiff and D.L. appeared

---

[4] In connection with this consultative examination, Plaintiff denied that D.L. had any social difficulties. (Tr. 234)

for the hearing, with counsel.  Both Plaintiff and D.L. testified concerning D.L.'s functional

limitations and symptomatology.  In a decision dated April 21, 2014, the ALJ found Plaintiff not

disabled.  (Tr. 15-29)  Plaintiff appealed the ALJ's decision.  The Appeals Council denied

review.  (Tr. 1-4)  Plaintiff has exhausted her administrative remedies, the Commissioner's

decision is final, and the matter is properly before this Court.

### C.    ALJ's Decision

In evaluating D.L.'s claim for disability, the ALJ followed the three-step process

applicable to child disability determinations.  At step one, the ALJ found that D.L. was not

engaged in substantial gainful activity as of the date of his application.  (Tr. 18)  At step two, the

ALJ found that D.L. suffered from the following severe impairments:  (1) mixed receptive and

expressive language disorder; and (2) a reading disorder.  (Tr. 18)

At step three, the ALJ found that D.L.'s severe impairments did not "meet" or medically

"equal" a listing.   The ALJ also found that none of D.L.'s severe impairments (alone or in

combination) "functionally" equaled a listing.  (Tr. 18)  In making this functional equivalence

finding, the ALJ evaluated D.L. in six specific functional domains established under the

Commissioner's regulations.  The ALJ found that D.L. had "marked" limitations in the domain

of acquiring and using information.  The ALJ found D.L. had "less than marked" limitations in

the domains of "interacting and relating with others," and "caring for yourself."  The ALJ found

D.L. had no limitation in the domains of "attending and completing tasks," "moving about and

manipulating objects," and "health and physical well-being."  (Tr. 22-28)  Because D.L. had

marked limitations in only one domain, and no "extreme" limitations in any domain, the ALJ

found D.L. not disabled.  (Tr. 29)

In evaluating D.L.'s functioning, the ALJ also assessed Plaintiff's credibility, D.L.'s credibility, and the persuasiveness of the opinion evidence submitted in this matter. The ALJ found the testimony concerning D.L.'s functional limitations to be "not entirely credible," when viewed in the context of the medical records, school records, credible opinion evidence, and the ALJ's observations at the hearing. (Tr. 20)

Regarding the opinion evidence, the ALJ discounted the opinions of D.L.'s teachers, Ms. Bober and Ms. Richardson. (Tr. 21-22) The ALJ assigned "some weight" to the opinion of psychologist Dr. Voelker, and great weight to the opinion of speech pathologist Lori Linder. The ALJ gave great weight to the joint opinion of the state agency consultants Drs. Devore and Mora, and Tricia Petrillo, M.S. The ALJ differed, however, with the agency consultants' opinion that D.L. had no limitations in the domain of interacting and relating to others. The ALJ thought the evidence submitted after the agency consultants' opinions were issued supported a finding that that D.L. had "less than marked" limitations in that domain. (Tr. 22)[5]

### D.    <u>Issues Before this Court</u>

Plaintiff contends that the ALJ erred in finding that D.L.'s limitations in the domain of interacting and relating to others were "less than marked." In this regard, Plaintiff argues that the ALJ erred in evaluating the opinion evidence in this matter.[6] (ECF No. 17)

---

[5] The ALJ also considered the Individual Functional Assessment form completed by Ms. Schmidt, another speech pathologist. The ALJ assigned "little weight" to Ms. Schmidt's opinion because it was in checklist form, provided no explanation for the basis of the opinion, and was inconsistent with the rest of the evidence. (Tr. 21)

[6] Plaintiff does not challenge the ALJ's adverse credibility determination. Therefore, the Court will not address that issue in detail. See <u>Julin v. Colvin</u>, 826 F.3d 1082, 1086 (8th Cir. 2016) (explaining that "[c]redibility determinations are the province of the ALJ" and the deference owed to such determinations); <u>Gregg v. Barnhart</u>, 354 F.3d 710, 713 (8th Cir. 2003) (holding that "[i]f an ALJ explicitly discredits the [plaintiff's] testimony and gives good reasons for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination").

## II.     Analytical Framework and Standard of Review

Children from low income families may receive Title XVI benefits if certain income and asset requirements are met, and if the child qualifies as "disabled."  See 42 U.S.C. § 1382(a)(1).  A child under the age of eighteen qualifies as disabled if that child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  See 42 U.S.C. § 1382c(a)(3)(C)(i).  As noted above, the Commissioner employs a three-step sequential evaluation process to determine whether a child meets this definition.  See 20 C.F.R. § 416.924(a).

At step one, the Commissioner determines whether the child is engaged in "substantial gainful activity."  If so, the Commissioner denies the claim; if not, the Commissioner moves to step two.  See 20 C.F.R. §§ 416.924(a), (b).  At step two, the Commissioner determines whether the child suffers from any impairments or combination of impairments that are "severe."  20 C.F.R. § 416.924(a).  Under the rules, an impairment is not severe if it "causes no more than minimal functional limitations."  See 20 C.F.R. § 416.924(c).  If the child suffers from an impairment or combination of impairments that qualifies as "severe," the analysis continues to step three.  At step three, the Commissioner determines whether the child has a severe impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment set forth in Appendix 1 of 20 C.F.R. pt. 404, subpart P.  See 20 C.F.R. § 416.924(d).

To "meet" or "medically equal" a listing, a child's severe impairment must meet the severity criteria for an individual listing.  See id.  If, however, the child's impairment (or combination of impairments) does not "meet" or "medically equal" any listing, the

Commissioner assesses whether the child has limitations that "functionally equal" a listing. See 20 C.F.R. § 416.926a(a).

In considering functional equivalence, the Commissioner assesses the child in six "broad areas of functioning" known as "domains." 20 C.F.R. § 416.926a(b). To equal a listing functionally, an impairment or combination of impairments must result in "marked" limitations in two domains of functioning, or an "extreme"[7] limitation in one domain. The six domains are:

> (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating to others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being.

See 20 C.F.R. § 416.926a(d).

If a claimant fails to meet the burden at any of the three steps, the ALJ must find the child not disabled. See 20 C.F.R. § 416.924(a).

The Eighth Circuit has emphasized that a district courts should narrowly review an ALJ's disability determination, and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings are affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547

---

[7] A "marked" limitation "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities …. Marked limitation also means a limitation that is more than moderate, but less than extreme. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."

An "extreme limitation "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities …. Extreme limitation also means a limitation that is more than marked. Extreme limitation is the rating we give to the worst limitations. However, 'extreme' limitation does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean."

20 C.F.R. §§ 416.926a(e)(2)(i), 416.92a(e)(3)(i).

F.3d 933, 935 (8th Cir. 2008). In this regard, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008).

Despite the deferential standard of review, a district court's review must still entail "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id.

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence and [the court] may have reached a different outcome").

**III.  <u>Discussion</u>**

Plaintiff makes two interrelated arguments for reversal. Plaintiff argues that the ALJ erred in finding D.L. had "less than marked" limitations in his ability to interact with others. In connection with her overall contention, Plaintiff argues that the ALJ erred in his evaluation of the opinion evidence in this matter. Because the resolution of the ALJ's treatment of the opinion evidence in this matter impacts the ALJ's domain findings, the Court will address Plaintiff's concerns regarding the opinion evidence first.

## A.    <u>Opinion Evidence</u>

Plaintiff contends that the ALJ erred by assigning great weight to the opinion of Ms. Linder, a speech pathologist, but failing to address the fact that Ms. Linder also thought D.L. was "severely" impaired in his expressive language skills.  (ECF No. 17 at 11)  Plaintiff further contends the ALJ should not have relied on Ms. Linder's prognosis that D.L. would continue to improve because Dr. Voelker and Ms. Schmidt documented expressive language difficulties after Ms. Linder's 2012 assessment.  Plaintiff also argues that the ALJ erred in giving great weight to Dr. Devore, who opined that D.L. had no limitations in the domain of interacting and relating to others.  (ECF No. 17 at 13)  Defendant argues that the ALJ properly evaluated all of the opinion evidence.  (ECF No. 22)  The Court concludes that the ALJ properly evaluated the opinion evidence in this matter and resolved differences between opinions on the basis of record evidence.

Regarding Ms. Linder's opinions, it was not improper for the ALJ to afford great weight to the opinion of Ms. Linder, and still find that D.L. had less than marked limitations in the domain of interacting and relating to others.

In substance, Plaintiff argues that it was incongruous for the ALJ to credit Ms. Linder's opinion that D.L. had moderate receptive language disorder and a severe expressive language disorder, and then find that D.L. had less than marked limitations in interacting and relating with others based on Ms. Linder's opinion that D.L.'s prognosis was good.  The Court disagrees. Plaintiff reads too much into the language that D.L. had a severe expressive disorder—this was not an opinion that D.L. was disabled under the rules for evaluation of social security cases.  This was an assessment of Ms. Linder's findings at that time; it is not incongruous for her to also find that D.L.'s impairments will improve with special help, education, and language therapy.  Ms.

Linder did the equivalent of diagnosing D.L. and predicting that he would respond favorably with treatment.

More importantly, perhaps, Dr. Linder's assessment is consistent with D.L.'s IEP and other evidence. As noted above, D.L.'s IEP noted issues with speech, reading, and learning. The IEP also noted that D.L. made significant progress as a result of his special education and language therapy. (See Tr. 142; "[D.L.] has made good progress with his language skills and IEP language goals. Language therapy minutes were reduced due to significant progress on his language goals, improved language performance in the classroom, and to allow more participation in the least restrictive environment.")[8] Therefore, it was not necessarily improper or inconsistent for the ALJ to credit Ms. Linder's opinions and also find that D.L. had less than marked limitations in interacting and relating with others.

Furthermore, even assuming some inconsistency in Ms. Linder's opinions, it is an ALJ's duty resolve conflicts in the opinion evidence, just as the ALJ must resolve discrepancies in the evidence of record more generally. See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("It is the ALJ's duty to resolve conflicts in the evidence."); Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 667 (8th Cir. 2003) (noting that it is up to the ALJ to resolve conflicts within the medical opinion evidence). The ALJ reasonably interpreted Ms. Linder's opinion evidence for the reasons discussed above; and Ms. Linder's findings are supported by substantial record evidence; and D.L.'s subsequent improvements tends to corroborate her prognosis.

Plaintiff argues, however, that later opinion evidence submitted by Ms. Schmidt and Dr. Voelker also undermines the conclusion that D.L.'s condition would continue to improve with special education and language therapy. (ECF No. 17 at 12) Plaintiff argues that both Ms.

---

[8] Plaintiff's own testimony tends to show Ms. Linder's prediction was accurate. Plaintiff acknowledged that D.L's skills improved with special education and language therapy. (Tr. 48)

Schmidt and Dr. Voelker noted difficulties in D.L.'s communication well after Ms. Linder's consultative examination. According to Plaintiff, this undermines Ms. Linder's opinion that D.L.'s prognosis was good. The Court disagrees.

First, as to Ms. Schmidt, the ALJ could reasonably discount this opinion. Ms. Schmidt opined that D.L. had marked limitations the domains of acquiring and using information, attending and completing tasks, interacting and relating to others, and caring for himself; and less than marked limitations in moving about and manipulating objects and health and physical well-being. The ALJ could reasonably conclude that the record does not support these limitations. For instance, as the ALJ noted, there is no indication in the record that D.L. has any difficulty at all in moving about and manipulating objects. Rather, Plaintiff alleges no such physical limitations. Furthermore, Ms. Schmidt simply checked boxes on a form; she cited no evidence in support of her opinions, and she failed to explain the bases for her opinions despite being asked to do so. These are all legitimate and accepted reasons for discounting opinion evidence. See Papesh v. Colvin, 786 F.3d 1126, 1133 (8th Cir. 2015) (discounting a doctor's opinion because it "is given in checklist form"); McCoy v. Astrue, 348 F.3d 605, 615 (8th Cir. 2011) (discounting an opinion that lacked narrative discussion of the source's findings).

Second, the fact that Dr. Voelker continued to note difficulties with language skills does not necessarily undermine Ms. Linder's opinion that D.L. would improve with treatment. The ALJ noted that D.L. continued to have some difficulties with these skills. As recounted above, however, Ms. Linder's opinion proved prescient, as D.L.'s IEP demonstrates. Again, Plaintiff's own testimony that D.L. has improved with special education and language therapy also corroborates Ms. Linder's opinion concerning D.L.'s prognosis. (Tr. 48)

In sum, many opinion sources in evidence indicated that D.L. had language and expressive limitations; and some sources and records specifically indicated that D.L.'s limitations would improve in time. To the extent the opinion evidence conflicted, it was the ALJ's duty to resolve those conflicts. The ALJ fulfilled that duty and substantial evidence supports the ALJ's ultimate conclusions concerning the opinion evidence at issue in this matter.[9]

**B.       ALJ's Finding Regarding D.L.'s Ability to Interact With Others**

Although the Court has addressed the opinion issue first, Plaintiff's primary argument is that substantial evidence does not support the ALJ's conclusion that D.L. suffered "less than marked" limitations in the domain of interacting with others. As will be explained, the Court disagrees. Between the medical evidence, the education record (including the IEP reviews), the opinion evidence, and the ALJ's findings at the administrative hearing, substantial evidence supports the ALJ's finding that D.L. has less than marked limitations in the domain of interacting and relating with others.

The domain of interacting and relating with others considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. See 20 C.F.R. § 416.926a(i). "Interacting" is defined as "initiating and responding to exchanges with other people, for practical and social purposes." "Relating to other people means forming intimate relationships with family members and with friends who are your age, and sustaining them over time." These skills "require [a child] to respond appropriately to a variety of emotional and behavioral cues." Id.

---

[9] This decision specifically addresses only those medical opinions to which Plaintiff has raised objections. The Court has reviewed all of the opinion evidence, and finds that substantial evidence supports the ALJ's treatment of the remaining sources as well.

According to the Commissioner's regulations, children D.L.'s age "should be able to develop more lasting friendships with children who are [their] age. [They] should begin to understand how to work in groups to create projects and solve problems. [They] should have an increasing ability to understand another's point of view and to tolerate differences. [They] should be able to talk to people of all ages, to share ideas, tell stories and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. § 416.926a(i)(2)(iv).

Substantial evidence supports the ALJ's finding that D.L. has less than marked limitations in this domain. There can be little dispute that ample evidence supports a conclusion that D.L. has few, if any, functional limitations in all of the areas described above except language issues. The record reflects that D.L. does well in the other areas discussed above. For example, as the ALJ noted, D.L. has no history of discipline problems, he gets along well with others, he is a likeable child, he has friends, and he plays football. (Tr. 40-41) Medical records show D.L. has "no behavior problems," "responds well to discipline," and "socializes well with peers." (Tr. 225) Similarly, D.L.'s IEP reflects that D.L. "works well with his peers, is polite, and respectful of the school and speech room rules, routines, and expectations." (Tr. 142)

This wide-ranging evidence indicating that Plaintiff can "interact," and "relate" well with others leads Plaintiff to concentrate on the portions of this domain which discuss language. (See ECF No. 17 at 8; focusing on those parts of the domain of interacting and relating with others which concentrate on language and communication) Plaintiff argues that D.L.'s expressive language disorder means that he cannot communicate, as necessary in this domain. Therefore, according to Plaintiff, the ALJ should have found that D.L. has marked limitations in this area.

Plaintiff's argument fails because the ALJ clearly acknowledged and accounted for D.L.'s expressive language disorder, and several pieces of evidence support the ALJ's view that

D.L.'s expressive language disorder was improving and that D.L.'s limitations in communication were not marked. For instance, the IEP shows that D.L. made "significant" progress in his language abilities. (Tr. 142) D.L. progressed in this area enough that his language therapy minutes were reduced after the 2011 IEP review. (Id.) Furthermore, as recounted earlier, Plaintiff acknowledged in her hearing testimony that D.L. showed improvement in these areas. This validates Ms. Linder's opinion that D.L.'s prognosis was good, and that opinion supports for the ALJ's ultimate conclusion in this domain.

The ALJ's observations of D.L. in this matter are also relevant. Because D.L.'s alleged impairments concerned his communication and expressive skills, the ALJ's discussion with D.L. at the hearing provided probative evidence concerning D.L.'s limitations. The ALJ observed D.L., found D.L. able to answer questions "without difficulty," and found D.L.'s speech 100% intelligible. (Tr. 26) These findings are entitled to deference in this Court, and provide substantial evidence in support of the ALJ's determination. See Lamp v. Astrue, 531 F.3d 629, 632 (8th Cir. 2008) (permitting an ALJ to consider his own observations in connection with disability adjudications).

In addition to Ms. Linder's opinion, the opinions of Ms. Richardson and the agency consultants lend support to the ALJ's conclusion that D.L. has less than marked limitations in the domain of interacting and relating to others. Ms. Richardson, D.L.'s special education teacher, opined that D.L. has "less than marked" limitations in the domain of interacting and relating to others, and explained that D.L. "works well in a group," and "is able to express his views [and] ideas." (Tr. 193-194) The joint opinion of the state agency consultants was that D.L. has no limitations outside of a marked limitation in acquiring and using information. (Tr. 62)

Finally, Plaintiff's representations in D.L.'s function report tend to support the ALJ's conclusion. Plaintiff indicated that D.L. can deliver phone messages, repeat stories he has heard, tell jokes or riddles accurately, explain why he did something, and talk with friends and family. These capabilities provide additional support for the ALJ's ultimate conclusion that, while D.L. had some limitations in the domain of interacting and relating to others, his limitations did not rise to the marked level.

**IV.** **Conclusion**

For all of the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's decision. This is a not a simple case, and Plaintiff has done an excellent job of focusing on the most significant and difficult issues in this matter. This is a case where the Court's deferential standard of review is important. Although reasonable jurists might have weighed the evidence in this matter differently, the ALJ's decision is well within the "zone of reasonableness," and therefore must be affirmed. See Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011)

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge in this matter be **AFFIRMED**.

A separate Judgment shall be entered this day.

_/s/ **John M. Bodenhausen**_
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of February, 2017